UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------- X
                                                              :
AMERICAN SAFETY INDEMNITY COMPANY,                            :   05 CV 5877 (ARR)
                                                              :
                              Appellant,                      :   NOT FOR ELECTRONIC
                                                              :   OR PRINT
        -against-                                             :   PUBLICATION
                                                              :
OFFICIAL COMMITTEE OF UNSECURED                               :   OPINION AND ORDER
CREDITORS, ET AL.,                                            :
                                                              :
                              Appellees.                      :
                                                              :
------------------------------------------------------------- X

ROSS, United States District Judge:

Appellant, American Safety Indemnity Company, appeals from an order of the United States Bankruptcy Court for the Eastern District of New York, dated July 20, 2005, in which the Honorable Carla E. Craig granted the summary judgment motion of the Official Committee of Unsecured Creditors (the "Committee") of Vanderveer Estates Holding, LLC (the "Debtor" or "Vanderveer") and denied the cross-motion for summary judgment by the American Safety Indemnity Committee ("ASIC"). For the reasons below, the order of the bankruptcy court is affirmed.

## BACKGROUND

The following facts are undisputed. The bankruptcy case from which this appeal is taken arose out of an excess liability insurance policy ("Insurance Policy") issued by ASIC to Vanderveer, with an initial policy period effective from December 31, 2000 to December 31, 2001. The policy was limited to $1,000,000 per occurrence and $2,000,000 in aggregate and

1

contained a self-insured retention endorsement ("SIR Endorsement"), requiring Vanderveer to pay the first $25,000 of defense costs, legal fees and costs of any settlement or judgment prior to any coverage under the policy. The policy states that the SIR Endorsement is a condition precedent to the performance of ASIC's obligations under the contract. Vanderveer paid the premium for the full policy year to ASIC in advance. Am. Safety Indemnity Co. v. Vanderveer Estates Holding, LLC (In re Vanderveer Estates Holding LLC), 328 B.R. 18, 22 (Bankr. E.D.N.Y. 2005).

On August 8, 2001, Vanderveer filed a voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code. Pursuant to an agreement between ASIC and Vanderveer, the Insurance Policy was cancelled on September 7, 2001 and the remaining premium returned to the Debtor. Id. Eleven personal injury actions have been filed alleging injuries on property owned by Vanderveer taking place during the period for which coverage was valid. The actions were automatically stayed due to Vanderveer's bankruptcy, and several were allowed to go forward after the plaintiffs agreed to limit their recovery to the proceeds of available insurance. (Pl.'s Statement of Material Facts, E.D.N.Y. Docket for In re Vanderveer Estates Holding LLC, No. 04-01202 (CEC) ("Bankr. Docket"), # 23; Def.'s Statement of Material Facts, Bankr. Docket # 15.) The approved reorganization plan of the bankruptcy estate reserves $25,000 for each insured claim for the cost of the SIR Endorsement. However, the Official Committee of Unsecured Creditors (the "Committee") of the Debtor refused to make these payments, arguing that doing so would mean that, out of all unsecured creditors to Vanderveer's estate, ASIC alone would receive full payment of its

2

claim. Am. Safety Indemnity Co., 328 B.R. at 22.

On March 25, 2004, ASIC brought an action in the Supreme Court of the State of New York for Kings County seeking a declaration that ASIC has no obligation to defend, pay losses or indemnify Vanderveer for personal injury actions covered by the Insurance Policy unless the Debtor's estate pays the SIR Endorsement of $25,000 per claim. The Committee subsequently removed the action to the U.S. Bankruptcy Court for the Eastern District of New York. (Notice of Removal, "Bankr. Docket", # 1). The Committee moved for summary judgment on December 22, 2004, seeking a determination that ASIC must provide coverage to defend and pay any resulting judgments in personal injury actions for the amount exceeding the policy's SIR Endorsement. ASIC cross-moved for summary judgment on January 14, 2005. Am. Safety Indemnity Co., 328 B.R. at 21.

On July 20, 2005, the Bankruptcy Court for the Eastern District of New York granted the Committee's motion for summary judgment and denied ASIC's cross-motion for summary judgment. Id. at 30. Applying Illinois law in compliance with the Insurance Policy's choice of law provision, the court held that ASIC's position failed in two respects. First, it was contrary to the requirements of Illinois Insurance Code, Chapter 215, § 5/388, and the corresponding provision of the Insurance Policy, which stipulate that an insured party's bankruptcy shall not preclude recovery of damages from the insurance company. Id. at 22-24. Second, the court held that ASIC's claim was inconsistent with judicial decisions in other states which, in construing Bankruptcy Code § 365, continued to impose obligations on insurers to pay claims under the policies even in absence of the bankrupt party's failure to

comply with contractual obligations subsequent to bankruptcy. Am. Safety Indemnity Co., 328 B.R. at 25-27 (citing, *inter alia*, Eastern Retailers Serv. Corp. v. Argonaut Ins. Co (In re Ames Dep't Stores, Inc.), 1995 WL 311764 (S.D.N.Y.1995).

The court ordered that ASIC defend and indemnify all personal injury actions pending against the Debtor that arose during the coverage period, but only to the extent that the claims exceeded the self-insured retention and without regard to whether the self-insured retention had been paid. The court continued the stay on all covered personal injury actions for 30 days pending appeal and ordered that the stay would remain in effect for 30 days after the final determination of all appeals. (Order Granting Summary Judgement of the Official Committee of Unsecured Creditors and Continuing Stay of Prosecution of Covered Claims, Bankr. Docket, # 34). ASIC timely filed a notice of appeal from this judgment, arguing that the Bankruptcy Court erred in granting the Committee's summary judgment motion.

## DISCUSSION

On appeal, a district court may affirm, modify, reverse or remand a bankruptcy judge's order or judgment. F.R.B.P. 8013. The district court reviews a bankruptcy court's conclusions of law de novo. Asbestosis Claimants v. United States Lines Reorganization Trust (In re United States Lines, Inc.), 318 F.3d 432, 435 (2d Cir. 2003). Because only the conclusions of law of the Bankruptcy Court are in dispute, I review the decision de novo.

ASIC makes two main arguments on appeal. The first is that the bankruptcy court decision essentially requires ASIC to fulfil the self-insurance obligations of Vanderveer, a

result compelled neither by the Insurance Policy nor § 5/388 of Illinois Insurance Code. ASIC's second argument is that the Insurance Policy constitutes an executory contract, which, under § 365 of the Bankruptcy Code, the Debtor must assume in order for the obligations of the other contracting party to continue. Am. Safety Indemnity Co., 328 B.R. at 23. I will address each of these arguments in turn.

I. Obligations of an Excess Insurer vis-à-vis a Bankrupt Self-Insured Party under the Insurance Policy and Illinois Insurance Code § 388

ASIC contends that, by requiring ASIC to defend and indemnify the personal injury actions for amounts exceeding the SIR Endorsement, the bankruptcy court decision essentially requires ASIC to "drop down" to assume the Debtor's self-insurance obligations under the Insurance Policy. (Br. of Appellant, at 7-9). Indeed, the bankruptcy court decision, while not requiring the appellant to pay the first $25,000 in defense costs per case, does create an incentive for ASIC to fund the entire defense so as to avert high indemnity costs that might result from a default judgment. However, the appellant has failed to show that this result is contrary to relevant case law interpreting the Illinois Insurance Code or inconsistent with bankruptcy law.

In support of its position that an excess insurer is not required to "drop down" to fulfil the obligations of a primary insurer, ASIC relies on Missouri Pacific Railroad Co. v. International Insurance Co., 288 Ill. App. 3rd 69, 82 (2d Dist., 1997); Hartford Accident and Indemnity Co. v. Chicago Housing Authority, 12 F.3d 92, 97 (7th Cir. 1993); and Premcor USA, Inc. v. American Home Assurance Co., 2004 WL 1152847 (N.D.Ill. May 21, 2004),

aff'd 400 F.3d 523 (7th Cir. 2005). However, none of these cases dealt with a situation where the insured party was in bankruptcy and therefore, as the bankruptcy court pointed out, their legal conclusions are inapplicable.

Rather, the obligations of the excess insurer when the insured party has filed for bankruptcy should be interpreted in light of Section 5/388 of Illinois Insurance Code, which requires that any liability or indemnity insurance policy issued contain "a provision that the insolvency or bankruptcy of the insured shall not release the company from the payment of damages for injuries sustained or death resulting therefrom or loss occasioned during the term of the policy." 215 I.L.C.S. § 5/388.[1] While the available case law does not directly address the situation at hand, the bankruptcy court decision, by enforcing the excess insurer's contractual duties even after the insured party has filed for bankruptcy, is consistent with Illinois case law that places continuing obligations on liability insurance companies.

In Home Insurance Company of Illinois v. Hooper, an Illinois appellate court found that a liability insurance company was required to indemnify the insured, notwithstanding the failure of that party to pay a self-insured retention of $250,000 due to bankruptcy. 294 Ill.App.3d 626, 634 (1st Dist. 1998). In interpreting the meaning of Section 5/388 of Illinois Insurance Code with regard to an excess insurer, the court held that "the plain language of section 388 makes clear the legislative intent to prevent insurers from using the insured's bankrupt condition and resulting inability to make actual payment to satisfy a judgment or any

---

[1] In compliance with this mandate, Section IV, subsection 1, of the Insurance Policy states that: "[the] bankruptcy or insolvency of the [Debtor] or of the [Debtor's] estate will not relieve [ASIC] of [its] obligations under this [insurance policy]."

portion thereof as grounds to avoid payment on a policy." Home Insurance, 294 Ill.App.3d at 632. Consequently, the court required the excess insurance company to pay the amount of any judgment exceeding $250,000 up to the policy limit. Id. at 633-34. As ASIC points out, the self-insured retention at issue in Home Insurance did not include defense costs, so the judgment essentially maintained the insurance company's obligations under the original agreement. (Appellant's Br., at 13). However, the appellant has given insufficient justification for why the result should be different when defense costs are included in the self-insured retention, given the Illinois public policy to promote compensation of injured parties.[2]

The appellant argues that the decision of the bankruptcy court, by placing ASIC in a position where it is advantageous to fund the full costs of defense, means that the company will incur substantial monetary liability not contemplated by the insurance contract. (Appellant's Br., at 8). However, it is generally true that parties to a contract may receive less than they bargained for when the other party goes bankrupt. For this reason, bankruptcy law requires that each claim or interest within a particular class be provided with the same treatment. 11 U.S.C. § 1123(a)(4). Thus, ordering the bankruptcy estate to pay the self-insured retention in advance would be inconsistent with bankruptcy law, by giving one unsecured creditor of the bankruptcy estate priority over the others. The bankruptcy court decision, by requiring ASIC to pay defense and indemnity costs that exceed the self-insured

---

[2] In support of its contention that § 5/388 should be interpreted narrowly, the appellant cites a general insurance treatise that does not specifically reference the Illinois statute nor its legislative intent. (Appellant's Br., at 10-11) (citing Robert Keeton & Alan Widiss, Insurance Law § 4.8(b) (1988). The appellant does not explain why this source should be used in lieu of an Illinois appellate court's interpretation of the statute in a related context.

retention amount, preserves the integrity of the contract between the parties as well as the policies animating Illinois Insurance Code § 5/388 and bankruptcy law. Any amounts incurred by ASIC for the costs of defending the personal injury suits that fall within the self-insured retention should be filed with the bankruptcy estate as unsecured claims and be dealt with accordingly.

II.   Executory Contract

The appellant further contends that the Insurance Policy is an executory contract which has not been assumed by the Debtor, thus relieving ASIC of its contractual obligations. Section 365 of the Bankruptcy Code provides that, subject to court approval, the bankruptcy trustee may assume or reject any executory contract of the debtor and, if the trustee does not do so within a given period, the contract is deemed to be rejected. 11 U.S.C. § 356 (a), (d)(1). The standard definition for an executory contract in the bankruptcy context is "a contract under which the obligation of both the bankrupt and the other party to the contract are so far unperformed that the failure of either to complete performance would constitute a material breach excusing the performance of the other." Vern Countryman, Executory Contracts in Bankruptcy, Part I, 57 Minn. L. Rev. 439, 460 (1973); In re Chateaugay Corp., 130 B.R. 162, 164 (S.D.N.Y 1991) (citing numerous appellate courts that have relied upon this definition). This court holds that the Insurance Policy does not constitute an executory contract and, thus, ASIC's obligations are not relieved by the failure of the Debtor to assume the policy subsequent to its bankruptcy petition.

In a case with similar facts to the present dispute, the Southern District of New York held that a liability insurance contract with a $50,000 deductible for defense and indemnification costs was not an executory contract that needed to be assumed by the bankruptcy estate to remain valid. Argonaut Insurance Company v. Ames Department Stores, Inc. (In re Ames Department Stores Inc.), 1995 WL 311764, at *3 (S.D.N.Y. 1995).³ The court emphasized that insurance policies that were executed pre-petition and for which the premium had been paid have not generally been found executory, even if the obligations of the insured continue post-petition. Id. (citing In re Texcan Corp., 976 F.2d 1269, 1271 (9th Cir. 1992); In re Sudbury, Inc., 153 B.R. 776, 778-80 (Bankr. N.D. Ohio 1993); In re Firearms Import and Export Corp., 131 B.R. 1009, 1013-14 (Bankr. S.D. Fla. 1991); In re Federal Press Co., 104 B.R. 56 (Bankr. N.D. Ind. 1989)); see also Beloit Liquidating Trust v. United Insurance Co., 287 B.R. 904, 905-06 (N.D. Ill. 2002).

The appellant argues that Argonaut was wrongly decided, because it relies on authorities in which the debtor's only remaining duty was to pay retroactive premiums or where the policies had lapsed prior to the bankruptcy petition. By contrast, according to ASIC, the Insurance Policy imposed more substantial obligations on the Debtor to investigate and defend claims and thus should appropriately be classified as an executory contract (Appellant's Br., at 16-18; Appellant's Reply Br., at 5-6, 9-10). However, the appellant fails to identify any case law in the insurance context that has found a policy to be executory when the premiums have been paid.⁴ Moreover,

---

³ While the instant case is decided under Illinois law, the similarity of the facts in Argonaut make the decision particularly relevant as persuasive precedent.

⁴ As an example of a comparable agreement determined by the courts to be executory, ASIC cites to the technology licensing agreement at issue in Lubrizol Enterprises, Inc. v. Richmond Metal Finishers, Inc., 756 F.2d 1043 (4th Cir. 1985). In that case, the debtor's

9

as the appellant acknowledges in its reply brief, Federal Press, 104 B.R. 56, in fact concerns a situation in which there was a self-insured retention covering both defense and liability. Although the court's decision in Federal Press rested in part on the fact that the contract had been terminated prior to bankruptcy, the court also emphasized that: "Importantly, [the debtor] already has performed its major responsibility under the policies, i.e., that of paying its premiums. Although its failure to comply with other conditions of the policies may or may not subject it to damages for a possible breach of contract, the court concludes that such a breach would not excuse Columbia from liability under the policies. The court therefore finds the insurance policies in controversy herein are not executory contracts." 104 B.R. at 66. The appellant has not offered a persuasive justification for rejecting this same argument here.

Further, while the facts of Texcan Corp., 976 F.2d 1269, are different, the reasoning is instructive. In resolving the question of whether an insurance contract was executory when the insured party owed premiums for a period after the debtor had filed for bankruptcy, the court emphasized that such a finding was precluded by an Arizona statute similar to § 5/388 of the Illinois Insurance Code. Id. at 1273. Because the Arizona statute precluded an insurance carrier from refusing to pay compensation for injuries covered by the policy due solely to the bankruptcy of the insured, a court could not in fact find Prof. Countryman's definition of an executory contract to be satisfied: the statute precluded insurers from using failure of the bankrupt party to excuse performance of their contractual obligations. Id. Similarly, because Illinois Insurance

---

continuing duties included: 1) notification and defense of patent infringement suits, 2) notification of any other use or licensing of the process, and 3) reduction of royalty rates accordingly, and indemnification of the other contracting party for losses due to misrepresentation or breach of warranty by the debtor. Id. at 1045. While the notification and defense duties resemble those at issue here, the other obligations are much more extensive.

10

Code § 5/388 prevents ASIC from using the Debtor's failure to pay its self-insured retention to excuse its performance, it effectively precluding a finding that the Insurance Policy is an executory contract. While the appellant distinguishes this case on the ground that it discusses retrospective premiums, ASIC does not address the court's relevant underlying analysis. (Appellant's Reply Br., at 8).

## CONCLUSION

For the foregoing reasons, the July 20, 2005 order and judgment of the bankruptcy court is affirmed in all respects.

SO ORDERED.

Allyne R. Ross
United States District Judge

Dated: September 27, 2006
       Brooklyn, New York

**SERVICE LIST:**

### Attorney for Appellant

Mark L. Antin
Gennet, Kallmann, Antin & Robinson PC
45 Broadway Atrium, Litman Suite
New York, NY 10006

### Attorneys for Appellees

Jonathan E. Polonsky
Martin G. Bunin
Peter V. Marchetti
Thelen Reid & Priest LLP
875 Third Avenue
New York, NY 10022


cc: Honorable Carla E. Craig, U.S. Bankruptcy Court E.D.N.Y.